NOT DESIGNATED FOR PUBLICATION

No. 128,983

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of Baby Boy C.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ROBB RUMSEY, judge. Submitted without oral argument. Opinion filed July 10, 2026. Affirmed.

*Jordan E. Kieffer*, of Jordan Kieffer, P.A., of Wichita, for appellant.

*Amanda M. Marino*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee.

Before ISHERWOOD, P.J., CLINE and COBLE, JJ.

ISHERWOOD, J.: The case before us arose from a proceeding in which an adoption agency, secured by the biological mother (Mother), sought to terminate the biological father's (Father) parental rights to his newborn son, Baby Boy C., in order to facilitate adoption. The agency cited several of the statutory factors set out under K.S.A. 59-2136(h)(1) in support of its request, including Father's unfitness, as well as his neglect and abandonment of Mother during the pregnancy. The district court agreed with the agency's contentions and terminated Father's rights to the child. Our careful review of the record on appeal led us to conclude that the district court's decision was supported by clear and convincing evidence and that termination of Father's rights was warranted under the circumstances. Accordingly, the district court's order terminating Father's parental rights to Baby Boy C. is affirmed.

1

FACTUAL AND PROCEDURAL BACKGROUND

Baby Boy C. was born in 2024. Mother promptly relinquished her parental rights and placed the infant with Adoption Choices of Kansas, Inc. (ACK). That decision granted the agency full authority over the child, and soon thereafter, ACK filed a petition to terminate Father's parental rights pursuant to K.S.A. 59-2136(h)(1)(B), (D), and (E) and (h)(2)(A). Specifically, and respectively, Father was unfit, he abandoned Mother during the last six months of her pregnancy, and he abandoned Mother upon learning she was pregnant. ACK clarified that Father's unfitness was attributable to his (1) extensive criminal history; (2) pervasive drug use, particularly methamphetamine; and (3) his failure to adjust his circumstances, conduct, or conditions to meet the needs of his infant son. It further asserted that pursuant to K.S.A. 59-2136(h)(2)(A), the district court possessed the authority to consider the baby's best interests as well as the "stability and permanency adoption can provide."

The district court ordered a deposition of Father at the Sedgwick County Jail, where he had been an inmate since the first week of September 2023. During the deposition, Father stated that he was employed prior to his arrest, provided financial support for Mother's other child, and was actively involved in Mother's pregnancy, including attending pregnancy-related medical appointments, until he was taken into custody. Father acknowledged that he failed to provide any financial assistance to Baby Boy C. upon the child's birth, though he claimed to have inquired into the possibility of doing so but ACK never responded.

Father explained that he and Mother remained in frequent communication to discuss the pregnancy and how to effectively co-parent the baby until Mother ceased all contact with him in November 2023. Father clarified that the jail had technological resources that allowed Mother to text him at the jail through his own mother's account, which was how Mother shared the sex of the unborn child in October 2023.

2

Father admitted that he had charges pending in three other cases and that his incarceration occurred as a product of his failure on probation. He also acknowledged that being in custody hindered his ability to provide physical care for the infant. But he claimed to have provided support for Mother in other ways, such as stockpiling diapers, wipes, and clothing for Baby Boy C. He also asserted that his family was willing to assist with child rearing until he was released, which prompted ACK's response that "the Court will not look at support from your mother and sister; they'll only look at your support to [Mother]." Father replied that he did not understand that perspective when his mother, who had access to his credit cards, could use his resources to assist Mother and the baby in his stead.

The relationship between Father and his attorney (Counsel) became strained as they prepared for the termination hearing, and Father ultimately requested that Counsel remove himself from the case. Counsel honored that request and moved to withdraw, citing the disagreement between him and Father concerning the nature of the case and the most beneficial strategy to employ going forward.

ACK filed an extensive trial brief and requested a determination from the district court that Father was unfit to parent Baby Boy C., and therefore, termination of his parental rights was necessary. In support of its request, the agency reiterated the foundational assertions outlined in its petition. It fleshed out its claims, in part, by highlighting the nine criminal convictions Father accumulated throughout the decade preceding Baby Boy C.'s birth, as well as his pervasive drug use. ACK opined that given Father's persistent periods of incarceration and inability to comply with the terms of his probation, it was "highly unlikely" he would abandon his criminal lifestyle and embrace the responsibilities of parenthood. Moreover, there was a strong likelihood that, in light of Father's extensive criminal history, he would be ineligible for probation on his pending charges, and given the possibility he would acquire additional convictions in the future, he was almost guaranteed to receive another prison sentence.

ACK concluded its arguments by noting that Father's failure to support Mother during the last six months of her pregnancy amounted to abandonment. The agency asserted that Father essentially deserted Mother physically, as well as emotionally, when he violated his probation during her pregnancy and then failed to make arrangements with anyone to ensure she received support.

*Counsel's Motion to Withdraw and Father's Request for a Continuance*

On the morning of the termination hearing, Counsel shared with the judge that he and Father mutually agreed that the best course of action was for counsel to withdraw from the case. Following Counsel's remarks, Father requested a continuance to secure replacement counsel and informed the district court that he had only just received ACK's trial brief the previous evening, so he had not yet fully digested their claims. ACK objected on the grounds that Father clearly understood how to hire an attorney and properly obtain a continuance; he simply neglected to do so.

The district court denied Father's request for a continuance, as well as Counsel's motion to withdraw. It opted to instead direct Counsel to serve alongside Father in a hybrid representation capacity because the case was "eight months into the trial, and [the motion] was done in the last week or so."

*Hearing on the Termination of Father's Parental Rights*

The case proceeded forward with the termination hearing, and ACK called three witnesses to testify: Father and two of its employees. Father confirmed many of the statements he made during his deposition.

On cross-examination, Father attempted to assure the judge that he was happy to learn of the pregnancy and loved his son but acknowledged that the odds were not

4

presently favorable to him given the fact he was in custody. On redirect, however, ACK asked Father to read a text message aloud wherein he stated: "'[F]orget it and her. I'll have other kids in the future, hopefully not with no spiteful woman.'" He claimed the statement was made during an emotional outburst and referenced, but did not produce, other texts in which he allegedly spoke lovingly about Baby Boy C.

An employee of ACK's (Employee) testified and told the district court that when the adoption process was explained to Father's mother, she did not express any interest in providing support to either Mother or Baby Boy C. ACK's case manager testified and explained that she offered emotional support to Mother during the pregnancy, as well as transportation to pregnancy-related medical appointments. She also clarified that the responsibility fell on the agency to assist Mother with rent and utilities, as well as groceries, phone, and transportation, and that she and Employee were the sole attendees at Baby Boy C.'s birth.

Father testified on his own behalf and explained that he lacked knowledge of the adoption until ACK's counsel served him with paperwork concerning the termination of his parental rights. Father's mother testified that she maintained communication with Mother until November 2023 and would have attended the birth but was unaware of it. She asserted that she was committed to helping Mother raise Baby Boy C. until Father straightened his life out.

ACK closed its remarks with a reminder to the judge that Father has an extensive criminal history, his drug use was pervasive, and he was unable to provide stable housing for the infant. It also ensured the district court remained mindful of the fact that despite Mother's pregnancy, Father chose to violate his probation rather than alter his behavior to ensure Mother had the support she needed. ACK took the position that the willingness of Father's family to help was of no moment because the parenting responsibility was Father's to bear. Thus, the potential for supportive involvement from his family was not

an appropriate factor for the judge to consider when making his ultimate determination. Finally, ACK impressed upon the district court that Father's custody status did not create an insurmountable barrier to support. To buttress this assertion, ACK reminded the judge that Father dispatched his own mother to complete various tasks at his behest and rallied supporters to contribute financially to his defense or account at the jail but did not expend the same effort to ensure Mother and the baby had support.

Counsel closed by reiterating that Father maintained communication with Mother while incarcerated, requested that his own mother provide support to Mother, and that Father would be released in approximately five months and intended to be actively involved with parenting Baby Boy C. He argued that Father's pending cases were irrelevant as Father had "a right to be presumed innocent" and a disposition other than incarceration remained a possibility.

When the hearing concluded, the judge acknowledged Father's desire to parent his son but explained that the law required Father to demonstrate the existence of particular facts before he was entitled to exercise his right to be an active parent in his son's life. Unfortunately, the case Father presented fell short of what was expected. Accordingly, the judge adopted ACK's findings of fact and conclusions of law and terminated Father's parental rights to Baby Boy C.

Father now brings his case before this court and requests that we analyze (1) whether the district court violated his right to due process when it denied his request for a continuance to obtain new counsel; (2) whether clear and convincing evidence supported the district court's finding that he was unfit to care for Baby Boy C.; and (3) whether the district court used a flawed best interests analysis to conclude that termination was appropriate. Additional facts are included as necessary to resolve the issues we are tasked with resolving.

LEGAL ANALYSIS

I. *We do not have sufficient information before us from which to analyze Father's claim that the district court neglected to honor his constitutional right to due process.*

Father raised this issue as the last of his three contentions of error. We took the liberty of reorganizing his claims for purposes of our review. If we concluded that Father's assessment was correct, then a new hearing would be warranted, in which case an analysis of Father's first and second issues would prove unnecessary.

It is Father's contention that a due process violation was committed when the judge neglected to inquire into the dissatisfaction Father expressed with his attorney, particularly where both Father and Counsel reported a breakdown in their communication and Counsel filed a motion to withdraw. According to Father, the violation was then compounded when the judge denied his request for a continuance to secure a new attorney and instead required him to go forward with Counsel in a hybrid representation role.

The first point we must address is preservation. The record does not provide any indication that Father raised this issue before the district court for its consideration. Generally, constitutional claims asserted for the first time on appeal are not properly before an appellate court for review. *State v. Smith*, 322 Kan. 190, 193, 587 P.3d 766 (2026).

> "To satisfy the preservation rule, a party must either provide a 'pinpoint reference to the location in the record on appeal where the issue was raised and ruled on' in the district court, or '[i]f the issue was not raised below, there must be an explanation why the issue is properly before the court.'" *In re N.E.*, 316 Kan. 391, 408, 516 P.3d 586 (2022).

There are limited exceptions available that enable us to exercise review in the absence of efforts toward preservation: (1) The new claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or prevent the denial of fundamental rights; or (3) the district court was right for the wrong reason. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Father neither acknowledges that this issue is raised for the first time on appeal nor invokes any of the exceptions that could potentially allow for its review. Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time by an appellate court. When a party raises a new issue and does not explain why this court should still undertake an analysis of its merits, the issue is not properly preserved. See *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). In this case, Father has offered no explanation for why, under the circumstances, we should thoroughly analyze his claim. Accordingly, we find that the issue is not properly before us for review and is considered abandoned. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015) (finding defendant abandoned issue because he failed to explain why appellate court should address issue for first time on appeal).

To the extent we are inclined to endeavor to analyze the merits of Father's issue, we are able to extract a bit more detail from the record of the termination hearing when Counsel and Father informed the district court that their ability to work together was strained. The judge afforded Father the opportunity to personally explain the situation, and Father's primary complaint was what he perceived to be Counsel's failure to ensure Father's mother was present for the hearing. Father informed the judge that between the difficulty he experienced in communicating with Counsel and his mother's convalescence from a recent surgery that potentially prohibited her from receiving the subpoena Counsel claimed he issued, Father was not convinced she was notified. The fact his mother had

not yet arrived at the hearing when this exchange occurred seemingly confirmed those suspicions in Father's mind, so he wanted a continuance to resume his efforts to secure a new attorney. Counsel then assured the judge that the subpoena was issued, which ACK's counsel corroborated, and that he also followed up with a phone call and left a message for Father's mother about the hearing. The judge specifically directed Counsel to continue with efforts to contact Father's mother as the court took breaks during the proceeding. Father did not specify any additional complaints with Counsel's representation.

The record before us belies Father's conclusory claim on appeal in two respects. First, despite Father's contentions to the contrary, the judge did conduct an inquiry into his complaints. Second, Father's mother was present for the hearing and testified rather extensively on his behalf. That being the only point of contention Father disclosed to the judge, it is unclear what the foundation is for the due process violation he claims to have suffered.

Any effort by us to delve further into this claim is frustrated by the superficial and conclusory nature of Father's briefing. On appeal, a party must present an argument supported by pertinent authority, and the failure to do so equates with a failure to brief the issue. See *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018). When confronted with a due process claim, the first step for a reviewing court is to determine whether a fundamental liberty or property interest is implicated. If the answer is an affirmative one, our next step is to ascertain the nature and extent of the process that is due. *In re J.L.*, 57 Kan. App. 2d 60, 64, 449 P.3d 762 (2019). In *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the Supreme Court articulated a three factor test for identifying what form due process takes in a given context. Those factors include the private interests at stake, the risk that the procedures used will lead to erroneous decisions, and any governmental interest. Kansas courts have adopted the *Mathews* test for purposes of determining the nature and extent of due process. See *In re J.D.C.*, 284 Kan. 155, 166-67, 159 P.3d 974 (2007). Additionally, because Father's

precise claim is that the district court employed a deficient procedure in ruling on his request for a continuance for substitute counsel, it not only falls within step two of the *Mathews* test but also triggers a second inquiry. That is, to establish a legitimate need for the appointment of new counsel, a party must show "'justifiable dissatisfaction'" with their appointed counsel. *In re B.H.*, 64 Kan. App. 2d 480, 493, 550 P.3d 1274 (2024) (quoting *State v. Pfannenstiel*, 302 Kan. 747, 759, 357 P.3d 877 [2015]). That standard requires the affected party to establish the existence of "a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication" between client and counsel. 302 Kan. 747, Syl. ¶ 3. The district court must then conduct an investigation to determine whether that degree of discontent has poisoned the attorney-client relationship. *In re B.H.*, 64 Kan. App. 2d at 493.

Father's briefing of this issue only slightly exceeds a single page, and he neither applies nor even identifies either of the two tests set out above that are integral components in the resolution of his due process claim. Rather, he simply offers the conclusory assertion that the district court's failure to inquire into Father's dissatisfaction "amounts to structural error in this context" and that "[r]eversal is required under both state and federal due process standards." Father's failure to favor us with anything more than a cursory statement deprives this court of the ability to analyze and weigh the merits of his due process claim. See *In re A.D.T.*, 306 Kan. 545, 553, 394 P.3d 1170 (2017) (finding defendant abandoned his claim because he made only "a cursory mention of constitutional rights" and failed to "present an argument as to how or why any provision of [the statute] is unconstitutional"). Father's failure to adequately brief his constitutionality claim results in an abandonment of that issue.

II. *Father's claims that the evidence fell short of what was required to sustain the district court's conclusions that Father was unfit to parent his son and that termination of Father's parental rights was warranted do not provide him with an avenue for relief.*

We turn now to Father's two remaining claims—that the district court erred in finding that he was unfit to parent his infant son and that given all the evidence and circumstances surrounding the case, termination of his parental rights was in Baby Boy C.'s best interests. ACK counters that the district court's findings and conclusions for both issues rest upon a solid evidentiary foundation.

Appellate courts will uphold the termination of a father's parental rights if, following a review of the evidence in a light most favorable to the prevailing party, we are satisfied that the district court's findings of fact are supported by clear and convincing evidence. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010). In conducting our assessment, we are expressly prohibited from reweighing evidence, passing on the credibility of witnesses, or redetermining factual questions as we work through our analysis. *In re K.W.D.*, 321 Kan. 100, 110, 573 P.3d 221 (2025).

It has long been held that under the Fourteenth Amendment to the United States Constitution, a parent has a fundamental liberty interest to make decisions regarding the care, custody, and control of their children. The United States Supreme Court has recognized it as "perhaps the oldest of the fundamental liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Even so, this fundamental right is not without limits. *In re P.R.*, 312 Kan. 767, 778, 480 P.3d 778 (2021). Because child welfare is a matter of public concern, the State may assert its interest "through state processes designed to protect children in need of care." *In re A.A.-F.*, 310 Kan. 125, 146, 444 P.3d 938 (2019).

Father's remaining two issues largely revolve around the Kansas Adoption and Relinquishment Act, K.S.A. 59-2111 et seq. (the Act). A determination of whether to

11

terminate paternal rights in association with an adoption proceeding is governed by K.S.A. 59-2136. Under K.S.A. 59-2136(h)(1), a district court may terminate a natural father's parental rights upon finding that clear and convincing evidence demonstrates the existence of at least one of the following factors:

"(A) The father abandoned or neglected the child after having knowledge of the child's birth;

"(B) the father is unfit as a parent or incapable of giving consent;

"(C) the father has made no reasonable efforts to support or communicate with the child after having knowledge of the child's birth;

"(D) the father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth;

"(E) the father abandoned the mother after having knowledge of the pregnancy;

"(F) the birth of the child was the result of rape of the mother; or

"(G) the father has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition." K.S.A. 59-2136(h)(1).

Additionally, K.S.A. 59-2136(h)(2)(A) mandates that the district court consider "all of the relevant surrounding circumstances" when making its decision regarding termination. Given that the "aim and end of adoption statutes" is to protect the welfare of children, we have no hesitancy in concluding that this statutory language necessarily encompasses the best interests of the child as a point to consider. *In re Adoption of V.A.*, No. 126,006, 2023 WL 6939849, at *5 (Kan. App. 2023) (unpublished opinion). The Kansas Supreme Court has previously held that this subsection was not included within the list of primary termination factors set out under subsection (h)(1) because it could not serve as "the sole basis for terminating a parent's rights." *In re Adoption of Baby Girl P.*, 291 Kan. 424, 435, 242 P.3d 1168 (2010). Thus, the mandate simply provides the district court with an additional factor to consider in the equation.

12

The provisions contained within the Act are to be strictly construed in favor of maintaining the rights of a natural parent when it is the mechanism relied on to terminate those rights without the parent's consent. *In re Adoption of Baby Girl P.*, 291 Kan. at 430. ACK, as the petitioner, bears the burden to demonstrate, by clear and convincing evidence, that termination of Father's parental rights is appropriate. *In re Baby Girl B.*, 46 Kan. App. 2d 96, 101, 261 P.3d 558 (2011).

To a lesser extent, Father's remaining issues involve the Act's tandem operation with the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq. (the Code). While the typical context for the Code is a child in need of care proceeding, it is equally applicable when the termination of a parent's rights is required to facilitate an adoption. K.S.A. 38-2269(a), (g)(1); see also *In re Adoption of J.M.D.*, 293 Kan. 153, 170, 260 P.3d 1196 (2011) (applying CINC standards to analysis of a parent's failure to satisfy basic parenting obligations and to finding of unfitness).

In advocating for a finding that termination of Father's rights to Baby Boy C. was warranted, ACK's trial brief, the body of evidence it relied on at the termination hearing and, correspondingly, the district court's ruling that terminated Father's rights, was founded upon three of the seven factors under K.S.A. 59-2136(h)(1):

> "(B)  the father is unfit as a parent or incapable of giving consent;
>
> . . . .
>
> "(D)  the father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth;
>
> "(E)  the father abandoned the mother after having knowledge of the pregnancy."

13

Again, ACK was only required to prove one of those conditions to the district court's satisfaction for it to find that Father's rights should be terminated. *In re Adoption of C.S.*, 57 Kan. App. 2d 352, 366, 452 P.3d 858 (2019). Additionally, because aspects of the Code may be woven into a petitioner's request for termination, ACK looked to the factors set forth at K.S.A. 38-2269(b) to substantiate its contention under K.S.A. 59-2136(h)(1)(B) that Father was unfit:

> "(b)  In making a determination of unfitness the court shall consider, but is not limited to, the following, if applicable:
>
> . . . .
>
> (3)  the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;
>
> . . . .
>
> (5)  conviction of a felony and imprisonment;
>
> . . . .
>
> (8)  lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child."

Following the receipt of evidence, arguments of the parties, and review of the exhibits admitted during the course of the hearing, the district court concluded that Father failed to fulfill his parenting obligations to his infant son, as well as those he owed to Mother, rendering it appropriate to terminate his parental rights to Baby Boy C. As support for this conclusion, the judge wholly adopted the findings of fact and conclusions of law outlined in ACK's trial brief.

Viewing the evidence in the light most favorable to ACK, as required by our governing standard of review, we are satisfied there was clear and convincing evidence adduced during the hearing to support the district court's decision. That is, there was evidence to support the judge's conclusion that Father was unfit, failed to support Mother during the last six months of her pregnancy, and generally abandoned Mother. We will address each of Father's claims in turn.

*Parental Unfitness Findings*

It is Father's position that the district court's decision concerning this factor is deficient because in finding that it justified termination, the judge placed too much significance on the fact that Father was incarcerated and then drew conclusions about Father's past conduct that were not necessarily accurate. Father contends that in order to receive the fair and just assessment he is entitled to, the judge was also required to take into account the fact that Father was enrolled in various programs while incarcerated and made plans for both housing and employment upon his release. The gist of Father's argument is that the failure to acknowledge those developments undermines the district court's conclusion that Father's unfitness was unlikely to change in the foreseeable future.

When the district court concluded that, based upon the evidence presented, Father was unfit to parent Baby Boy C. and was likely to remain so for the foreseeable future, it necessarily found that each of the three underlying factors alleged by ACK as evidence of his unfitness—Father's extensive criminal history, pervasive use of narcotics, and failure to adjust his conduct or condition to meet the needs of the child—existed and rendered Father unfit. Father only addresses those reasons in a cursory fashion—simply that the district court focused too heavily on his presently incarcerated status and seemingly afforded no weight to the fact that he registered for "programs" while in custody and "made clear plans for housing and employment upon release." He offers no corresponding details from which we can conduct any appreciable analysis to overcome

15

the district court's unfitness finding. Their purported existence alone falls short. A point raised incidentally in a brief and not argued therein is deemed waived or abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017); *In re G.P.*, No. 124,862, 2022 WL 5290300, at *3 (Kan. App. 2022) (unpublished opinion). And issues not adequately briefed are likewise deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

Even if we were so inclined to find Father's claim compelling, he does not challenge the validity of the remaining factors the district court relied on in concluding that termination was appropriate. Namely, he failed to support Mother during the last six months of her pregnancy, and he abandoned her upon learning of the pregnancy. K.S.A. 59-2136(h)(1)(D), (E). Once again, termination of a natural father's parental rights may be ordered even if only one of the factors alleged under K.S.A. 59-2136(h)(1) is proven by clear and convincing evidence. *In re Adoption of C.S.*, 57 Kan. App. 2d at 366. Any appellate claims related to a decision of the district court that are not briefed are deemed waived and will not be addressed. *Bogina v. 5700 Barton*, No. 127,103, 2026 WL 913037, at *15 (Kan. App. 2026) (unpublished opinion). That is, the ruling of the district court as to those issues will not be disturbed. Accordingly, Father cannot prevail on his claim. Where Father has not challenged two of the three justifications the district court cited as weighing in favor of termination, we cannot decide this issue in his favor and grant the new termination proceeding he requested.

Finally, Father contends that the district court failed to make an adequate inquiry into Baby Boy C.'s best interests. According to Father, this factor "requires the court to engage in a comprehensive and individualized assessment of the child's needs and circumstances" but the district court neglected to do so here. He does not favor us with a citation to the legal authority that imposes this mandatory analysis.

Even so, Father's second claim of error meets the same fate as his first. The district court relied on three separate factors from K.S.A. 59-2136(h)(1) in granting ACK's request for termination, and any one of those can independently provide the foundation for that decision. Two of those factors went unchallenged on appeal. Again, the best interests of the child cannot serve as an independent justification for termination of parental rights under K.S.A. 59-2136. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1064, 190 P.3d 245 (2008). Thus, in seeking to undermine the district court's findings as to the best interests of the child, Father merely challenges a portion of a claim. That contention is not sufficient to move the needle any closer toward granting the new termination hearing he seeks.

The district court terminated Father's rights to Baby Boy C. because clear and convincing evidence demonstrated that Father was unfit, failed to support Mother during the last six months of her pregnancy, and abandoned her upon learning of the pregnancy. We are not persuaded there is any compelling reason to overturn that conclusion. Accordingly, we affirm the district court's decision finding that termination of Father's rights to Baby Boy C. is warranted.

Affirmed.